UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DWANE A. CLAY,

                                        Plaintiff,

        -against-                                        8:10-CV-00239 (LEK/RFT)[1]

COUNTY OF CLINTON, *et al.*,

                                        Defendants.
_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

        Currently before the Court in this civil rights action filed by Dwane A. Clay

("Plaintiff") are: (1) a Motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal

Rules of Civil Procedure and/or summary judgment pursuant to Rule 56, filed by Defendants Wylie

and County of Clinton ("the County Defendants"); (2) a Motion for judgment on the pleadings

pursuant to Rule 12(c) filed by Defendants City of Plattsburgh, Racicot, Major, Martin, and Barry

("the City Defendants"); and (3) a Letter Motion filed by Plaintiff requesting that the undersigned

schedule a Rule 16 conference despite the Order of United States Magistrate Judge Randolph F.

Treece adjourning that conference.  Dkt. Nos. 20 ("County Motion"), 22 ("City Motion"), 40

("Letter Motion").

        For the reasons set forth below, the County Defendants' Motion for judgment on the

pleadings and/or summary judgment is granted, and the City Defendants' Motion for judgment on

the pleadings is also granted.  Plaintiff's Letter Motion requesting that the undersigned schedule a

_____

[1] On August 8, 2012, this matter was reassigned to the Court from the Honorable Glenn T.
Suddaby, United States District Judge.  Dkt. No. 41.

Rule 16 conference is denied as moot.

## II.    BACKGROUND

Plaintiff's Complaint alleges as follows.  On November 18, 2007, Gary Desir was stabbed outside a nightclub in Plattsburgh, New York.  See generally Dkt. No. 1 ("Complaint").  On November 19, 2007, Plaintiff was "taken from his home, arrested and charged" with assault in the first degree and criminal possession of a weapon in the third degree for the stabbing of Desir.  Id. ¶ 38.  Notwithstanding Plaintiff's innocence and Defendants' awareness of their lack of inculpatory evidence against Plaintiff, Plaintiff was unlawfully detained (initially by the City Defendants, then by the County Defendants) and imprisoned on these charges from November 19, 2007 through May 7, 2008.  See generally id.  During that time, Defendant Wylie and his office, inter alia: (1) requested that the state court set an unreasonably high bail; (2) failed to provide Plaintiff with notice of Grand Jury proceedings against him; (3) neglected to carry out their duties regarding a preliminary hearing following Plaintiff's arraignment; and (4) made untruthful representations to the state court, Plaintiff, and Plaintiff's attorney regarding the evidence against Plaintiff.  See generally id.  After Plaintiff's arrest, he was prosecuted by the Clinton County District Attorney's Office.  His case was presented to grand juries in both November 2007 and January 2008.  See generally id. ¶¶ 110-20.

On April 16, 2008, Defendant Assistant District Attorney Chantelle Schember informed Plaintiff's criminal defense counsel that DNA found on Desir's jacket and on the knife used to stab Desir did not match a sample provided by Plaintiff.  Id. ¶ 131.  Nevertheless, Defendants continued to pursue charges against Plaintiff.  See id. ¶¶ 131-35.  On motion of Plaintiff's criminal defense counsel, the Honorable Patrick R. McGill, Clinton County Court Judge dismissed the charges

pending against Plaintiff "on grounds that there was no evidence linking plaintiff to the commission of the serious offenses charged."  Id. ¶ 140.

Based on these factual allegations, Plaintiff's Complaint asserts the following eight claims against Defendants: (1) a claim of unlawful or false arrest; (2) a claim of unlawful or false imprisonment; (3) a claim of malicious prosecution; (4) a claim of abuse of process; (5) a claim of failure to intervene; (6) a claim of municipal liability (against Defendants County of Clinton and City of Plattsburgh only); (7) a claim of supervisory misconduct; and (8) a claim of conspiracy.  Id. As relief, Plaintiff requests five million dollars ($5,000.000.00) in damages for each cause of action, in addition to five million dollars ($5,000,000.00) in punitive damages.  Id.

The Court presumes the parties' familiarity with the remaining factual allegations, claims, and requests for relief set forth in the Complaint.

## III.   LEGAL STANDARD

### A.  Motions for Judgment on the Pleadings

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim."  Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).  In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all [factual] allegations in the amended complaint as true and draw all inferences in the light most favorable to" the non-moving party.  In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007). "Documents that are attached to the amended complaint or incorporated in it by reference are deemed part of the pleading and may be considered."  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (citations omitted).  To survive a motion to dismiss, "an amended complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544,
570 (2007)).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for
more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550
U.S. at 570).  Facial plausibility exists "when the pleaded factual content allows the court to draw
the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Additionally,
the "tenet that a court must accept as true all of the allegations contained in an amended complaint is
inapplicable to legal conclusions."  Id.

**B. Motions for Summary Judgment**

Rule 56 instructs a court to grant summary judgment if "there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).
Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary
judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could
return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis
for the motion and of identifying those portions of the record that the moving party claims will
demonstrate the absence of a genuine issue of a material fact.  Celotex Corp. v. Catrett, 477 U.S.
317, 323 (1986).  However, if the moving party has shown that there is no genuine dispute as to any
material fact, the burden shifts to the non-moving party to demonstrate "the existence of an element
essential to that party's case, and on which that party will bear the burden of proof at trial."  Id.  This
requires the non-moving party to do "more than simply show that there is some metaphysical doubt

4

I

as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986).

At the same time, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). The Court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

For a non-moving party to obtain relief under Rule 56(d), a litigant must submit an affidavit showing "(1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant has been unsuccessful in those efforts." Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 303 (2d Cir. 2003).

**C. Claims Based on 42 U.S.C. §§ 1983 and 1985**

Section 1983 assigns liability to "[e]very person who, under color of any statute, ordinance, regulation, custom or usage of any State . . ., subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted).

Section 1985, in pertinent part, reads as follows:

I

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42. U.S.C. § 1985(3).  "To state a cause of action under Section 1985(3), a plaintiff must allege (1) a conspiracy (2) the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States."  Roman Catholic Diocese of Rockville Centre, New York v. Inc. Vill. of Old Westbury, No. 09-CV-5195, 2011 WL 666252, at *21 (E.D.N.Y. Feb. 14, 2011) (quoting Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999)).  Further, for a plaintiff to state a claim under § 1983, he must allege facts plausibly suggesting the personal involvement of the defendants.  See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983.") (internal quotation marks omitted).

### D. Sovereign Immunity

The Eleventh Amendment "bars federal courts from entertaining suits brought by a private party against a state in its own name . . . .  To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."  Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993).  "When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county."  Baez v.

Hennessy, 853 F.2d 73, 77 (2d Cir. 1988); see also Ying Jing Gan, 996 F.2d at 536.  Accordingly, a district attorney sued in his official capacity is entitled to immunity under the Eleventh Amendment. See Maier v. Phillips, No. 99-CV-7120, 2000 WL 234453, at *1 (2d Cir. Feb. 1, 2000) (affirming district court's determination that "Eleventh Amendment shields [the defendant-district attorney] from liability because he was acting in his official prosecutorial capacity").

### E.  Absolute Immunity

When a state official is sued in his individual capacity for money damages under § 1983, he may be entitled to absolute immunity "depending in part on the nature of the function performed" by the official.  Ying Jing Gan, 996 F.2d at 529.  "An official who asserts absolute immunity from § 1983 liability shoulders the burden of establishing the existence of immunity for the function in question."  Hill v. City of New York, 45 F.3d 653, 660 (2d Cir. 1995) (citing Antoine v. Byers & Anderson, Inc., 508 U.S. 429 (1993).

A prosecutor is entitled to absolute immunity for "performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process.'"  Id. (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)).  "[G]enerally only (a) the prosecutor's decisions with regard to whether or not to institute a prosecution and (b) his performance of his litigation-related duties are given the shield of absolute immunity.  Most other activities are characterized as administrative or investigative and, thus, merit less protection."  Id. at 530 (citations and quotation marks omitted).

Because determining whether a prosecutor's conduct is properly categorized as prosecutorial, investigative, or administrative "may present [a] difficult question[]," Imbler, 424 U.S. at 431 n.33, the Supreme Court has adopted a "functional approach" that looks at "the nature of the function performed, not the identity of the actor who performed it."  Forrester v. White, 484

7

U.S. 219, 229 (1987).  "The Second Circuit views the pre-litigation function that a prosecutor performs as having at least two aspects: '(1) the supervision and interaction of law enforcement agencies in acquiring evidence which might be used in a prosecution, and (2) the organization, evaluation, and marshalling of the evidence into a form that will enable the prosecutor to try a case, seek a warrant, indictment, or order.'"  Ying Jing Gan, 996 F.2d at 528 (quoting Barbera v. Smith, 836 F.2d 96, 100 (2d Cir. 1987)) (emphasis removed).

"[T]he first category consists of actions that are of a police nature and are not entitled to absolute protection."  Barbera, 836 F.2d at 100; see also Burns v. Reed, 500 U.S. 478, 493 (1991) (holding that "advising the police in the investigative phase of a criminal case is [not] so intimately associated with the judicial phase of the criminal process that it qualifies for absolute immunity") (quotation marks and citation omitted).[2]  Generally, "[b]efore any legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts."  Hill, 45 F.3d at 661 (citing Barbera, 836 F.2d at 100).

### F.  Limited Municipal Liability

In Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), the Supreme Court held that "[l]ocal governing bodies . . . can be sued directly under [§ 1983] for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Monell, 436 U.S. at 690; see also Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 124-25 (2d Cir. 2004).  However, a municipality cannot be held liable under §1983 for the "actions

---

[2] Cf., e.g., Conte v. County of Nassau, NO. 06-CV-4746, 2008 WL 905879, at *23 (E.D.N.Y. Mar. 31, 2008) (collecting cases where courts found that absolute immunity did not protect prosecutors' behavior).

alleged to be unconstitutional by its employees below the policymaking level on the basis of

*respondeat superior*."  Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); see also

Monell, 436 U.S. at 691; Amensty Am., 361 F.3d at 125.

To prevail on a §1983 claim against a municipality, a plaintiff must demonstrate that the

policy, ordinance, regulation, or decision adopted by the municipality, and implemented by its

employee(s), caused the plaintiff's alleged constitutional deprivation.  Monell, 436 U.S. at 691-92.

This can be shown by establishing either that the policy itself is unconstitutional, or that the

application of an otherwise lawful policy is unconstitutional.  Amnesty Am., 361 F.3d at 125.

Generally, in New York, district attorneys (and assistant district attorneys) are "presumed to

be local county officers, not state officers . . . [except] when a prosecutor makes individual

determinations about whether to prosecute violations of state penal laws."  Myers v. Cnty. of

Orange, 157 F.3d 66, 76-77 (2d Cir. 1998) (collecting authorities).  Therefore, where a plaintiff

asserts a municipal-liability claim against a county based on the conduct of a district attorney,

whether that county is liable on a theory of *respondeat superior* turns first on the character of the

district attorney's conduct.  See Pinaud v. Cnty. of Suffolk, 52 F.3d 1139, 1154 n.14 (2d Cir. 1995)

("[W]here a district attorney acts as the manager of the district attorney's office, the district attorney

acts as a county policymaker."); Ying Jing Gan, 996 F.2d at 536 (finding that, as long as a plaintiff's

"claims center[] not on decisions whether or not, and what charges, to prosecute[,] but rather on the

administration of the district attorney's office, the district attorney has been treated . . . as an official

of the municipality to which he is assigned"); Walker v. City of New York, 974 F.2d 293, 301 (2d

Cir. 1992) (finding a county liable for the "district attorney's management of the office–in particular

the decision not to supervise or train [assistant district attorneys] on Brady and perjury issues");

Gentile, 926 F.2d 142, 152 n.5 (2d Cir. 1991) (finding that a county is liable under a theory of

*respondeat superior* for the county's "long history of negligent disciplinary practices regarding law

enforcement personnel, [that gave] rise to the individual defendants'[including the county's district

attorney's] conduct in promoting the malicious prosecution of [the] plaintiffs"); <u>but see</u> Baez v.

Hennessy, 853 F.2d 73, 77 (2d Cir. 1988) (finding that the county is not liable for the district

attorney's decisions regarding "when and in what manner to prosecute a suspected offender").

### G.  Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless

defendant's alleged conduct, when committed, violated 'clearly established statutory or

constitutional rights of which a reasonable person would have known.'"  <u>Williams v. Smith</u>, 781

F.2d 319, 322 (2d Cir. 1986) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 815 (1982)).  As a result,

a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the

facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2)

"whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation

confronted."  <u>Sira v. Morton</u>, 380 F.3d 57, 68-69 (2d Cir. 2004); <u>see also</u> <u>Higazy v. Templeton</u>, 505

F.3d 161, 169, n.8 (2d Cir. 2007).

In determining the second issue (<u>i.e.</u>, whether it would be clear to a reasonable official that

his conduct was unlawful in the situation confronted), courts in this Circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2)
> whether the decisional law of the Supreme Court and the applicable circuit court
> support the existence of the right in question; and (3) whether under preexisting
> law a reasonable defendant official would have understood that his or her acts
> were unlawful.

Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991), cert. denied, 503 U.S. 962 (1992); see also Pena v. DePrisco, 432 F.3d 98, 115 (2d Cir. 2005).  "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful."  Higazy, 505 F.3d at 169-70.  This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

Finally, it is important to note that, "usually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted."  McKenna v. Wright, 386 F.3d 432, 435 (2d Cir. 2004) (citation omitted).  However, the qualified immunity defense may "be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint."  Id. at 435.

## IV.    DISCUSSION

### A. County Defendants' Motion[3]

#### 1. The Parties' Briefing on County Defendants' Motion

---

[3]   County Defendants frame their Motion as one for summary judgment or judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Because the Court exercises its discretion to consider extrinsic materials at this point, the court treats County Defendants' Motion as one for summary judgment and therefore applies the applicable legal standard set forth *supra*.  See Cleveland v. Caplaw Enterprises, 448 F.3d 518, 521 (2d Cir. 2006).

I

Generally, in support of their Motion for judgment on the pleadings and/or summary judgment, the County Defendants argue as follows: (1) based on Plaintiff's factual allegations, and/or the admissible record evidence, Defendant Wylie is entitled to Eleventh Amendment and absolute immunities because, as a district attorney, Defendant Wylie is a state actor; (2) based on Plaintiff's factual allegations, and/or the admissible record evidence, Defendant County of Clinton cannot be held liable on a theory of *respondeat superior* for the actions of Defendant Wylie; and (3) in any event, based on Plaintiff's factual allegations, and/or the admissible record evidence, Plaintiff's reliance on the isolated events of this case is misplaced because those events do not establish municipal liability against Defendant County of Clinton.  See generally Dkt. No. 21 ("County Defendants' Memorandum of Law")

Generally, in Plaintiff's Response to the County Defendants' Motion for judgment on the pleadings and/or summary judgment, he argues as follows: (1) Defendant Wylie is not entitled to either Eleventh Amendment or absolute immunity because his conduct was not taken in his prosecutorial capacity as an advocate of the state; and (2) Plaintiff has submitted testimony establishing a dispute of material fact as to whether Defendant County of Clinton maintains (and, through Defendant Wylie, implements) a discriminatory policy or custom against minorities.  See generally Dkt. No. 31.

   *2.  Analysis*

     a.  Sovereign Immunity for Defendant Wylie

After carefully considering the matter, the Court concludes that sovereign immunity applies to Defendant Wylie.  However, the Court finds that Defendant Wylie is entitled to immunity under

the Eleventh Amendment only to the extent that he is sued in his official capacity *based on actions taken by him as a State prosecutor or advocate*.  See Maier, 2000 WL 234453, at *1 ("Eleventh Amendment shields [the defendant-district attorney] from liability."); Rodriguez v. Weprin, 116 F.3d 62 (2d Cir. 1997) ("To the extent [the plaintiff] seeks damages from [former district attorneys and an assistant district attorney], the Eleventh Amendment bars his claims.").  As Plaintiff correctly observes in his Memorandum of law, Eleventh Amendment immunity does not extend to actions taken by Defendant Wylie in his official capacity *as a mere county employee who was participating in the criminal investigation of Plaintiff*.  Dkt. No. 31 at 3.  However, Plaintiff concedes that "claims . . . against the DA in his official capacity *and* based on his actions taken in his State prosecutorial role may be dismissed as barred by the Eleventh Amendment sovereign immunity."  Id. at 4 (emphasis in original).  Therefore, the Court dismisses Plaintiff's claims against Defendant Wylie in his official capacity based on actions taken by him as a State prosecutor or advocate.[4]

### b.  Absolute Immunity for Defendant Wylie

"The entitlement of a prosecutor to absolute immunity from a claim for damages against him in his individual capacity on account of his official actions depends principally on the nature of the

---

[4]  The Court notes that, although Plaintiff has submitted an Affidavit pursuant to Rule 56(d) of the Federal Rules of Civil Procedure arguing that he should be permitted further discovery before the Court grants the County Defendants' Motion for summary judgment as to Defendant Wylie's sovereign immunity affirmative defense, the Court finds that the affidavit fails to establish what facts Plaintiff seeks to resist that portion of the motion, or how those facts would establish a genuine dispute of material fact as to whether Defendant Wylie is entitled to sovereign immunity under the Eleventh Amendment when acting in his official capacity as a state prosecutor.  See generally Dkt. No. 27.  See Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999) (finding that the nonmovant opposing summary judgment on the grounds that additional discovery is needed must establish, *inter alia*, the facts sought to resist the motion and how those facts are expected to create a genuine dispute of material fact).  For these reasons, the Court finds it appropriate to grant the County Defendants' Motion for summary judgment as to the official-capacity claims in question without permitting Plaintiff further discovery.

function performed, not on the office itself."  Ying Jing Gan, 996 F.2d at 530.  "[P]rosecutors are

entitled to absolute immunity from suits for damages arising from activities that are 'intimately

associated with the judicial phase of the criminal process.'"  Barbera, 836 F.2d at 99 (quoting Imbler,

424 U.S. at 430-31).  "This protection encompasses 'all of [a prosecutor's] activities that can fairly

be characterized as closely associated with the conduct of litigation or potential litigation' . . .

[including the] decision [of] whether or not to prosecute."  Barbera, 836 F.2d at 99 (quoting Barrett

v. U.S., 798 F.2d 565, 571-72 (2d Cir. 1986) (additional citations omitted)).[5]

 Here, Plaintiff's Affidavit contains the following assertions regarding Defendant Wylie's

involvement in Plaintiff's alleged unlawful or false arrest: (1) on November 19, 2007, Defendant

Wylie, dressed in street clothes, entered the interview room of the Plattsburgh P.D., where Plaintiff

was being held by at least one Plattsburgh P.D. detective; (2) Defendant Wylie briefly reviewed

some paperwork before "look[ing at Plaintiff] and the police personnel in the room" and saying,

"'We've got his ass now' and that 'we are giving him the max, five to twenty-five'"; (3) Defendant

---

[5]  By contrast, "[a]bsolute immunity is not available . . . when a prosecutor undertakes conduct that
is beyond the scope of his litigation-related duties . . . [including] a prosecutor's investigative duties
. . . ."  Barbera, 836 F.2d at 100.  The Second Circuit has explained a prosecutor's investigative
duties in the following manner:

> As we see it, the pre-litigation function that a prosecutor performs has at
> least two aspects: (1) the supervision of and interaction with law
> enforcement agencies in *acquiring* evidence which might be used in a
> prosecution, and (2) the *organization, evaluation, and marshalling* of this
> evidence into a form that will enable the prosecutor to try a case or to seek a
> warrant, indictment, or order.  While both of these categories of activities
> occur before the commencement of formal legal proceedings, and therefore
> may be loosely termed 'investigative,' we believe that the first category
> consists of actions that are of a police nature and are not entitled to absolute
> protection.

Id. (emphasis in original, citations omitted).

Wylie's statements were aimed at intimidating Plaintiff; and (4) Plaintiff was arrested following Defendant Wylie's statements to law enforcement.  Dkt. No. 28, at 6-7.

The Court finds that the current record demonstrates that Defendant Wylie reviewed investigatory materials and decided to initiate legal action against Plaintiff.  As a matter of law, therefore, Defendant Wylie is entitled to absolute immunity for initiating a prosecution.  See, e.g., Imbler, 424 U.S. at 430-31 ("We hold . . . that in initiating a prosecution . . ., the prosecutor is immune from a civil suit for damages under [Section] 1983"); Burns v. Reed, 500 U.S. 478, 486 (1991) (stating that Imbler held that a prosecutor is entitled to absolute immunity for "'initiating a prosecution and in presenting the State's case' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process'") (quoting Imbler, 424 U.S. at 430, 431); Amaker v. New York State Dep't of Corr. Servs., 435 F. App'x 52, 55 (2d Cir. 2011) (finding that the district attorney's "decision to prosecute" gives rise to absolute immunity); Ying Jing Gan, 996 F.2d at 530 ("A prosecutor thus has absolute immunity in connection with the decision whether or not to commence a prosecution."); Barbera, 836 F.3d at 99 ("We have previously held that a prosecutor is absolutely immune with respect to a decision whether or not to prosecute.").

The Court is not persuaded that Defendant Wylie's asserted communications with Plaintiff served as legal advice to law enforcement such that it would not be protected by the shield of absolute immunity.  Indeed, Plaintiff asserts that he believes that Defendant Wylie's comments were intended, *inter alia*, to intimidate Plaintiff, meaning that these comments were directed towards him.  Id. at 7 ("I also think that DA Wylie said those things in my presence in an attempt to scare or intimidate me and influence me to confess . . . .").  Even if Defendant Wylie directed his comments toward law enforcement, the Court finds that the nature of the comments do not rise to the level of

legal advice. Cf. Ying Jing Gan, 996 F.2d at 531 (finding that "a prosecutor's communication to police officers of his decision as to precisely what charges he would, and what charges he would not, lodge against a given individual is so closely related to the prosecutorial decision itself as to warrant absolute immunity"); Borrell v. Piplani, 96-CV-3170, 1996 WL 648669, at *2-3 (E.D.N.Y. Oct. 31, 1996) (finding the prosecutor absolutely immune for allegedly entering the Plaintiff's holding cell, calling the plaintiff's name, and then saying to the plaintiff, "Remember me Borrell, this time I am going to get you no matter what I have to do").[6]  The Court therefore finds that Defendant Wylie is entitled to absolute immunity for his actions as alleged by Plaintiff.

<u>c.</u>  Limited Municipal Liability for Defendant Clinton County

For Plaintiff's municipality liability claim to survive the County Defendants' Motion for summary judgment, Plaintiff bears the burden of establishing a genuine dispute of material fact as to whether a County of Clinton employee with policymaking authority "implement[ed] or execute[d] a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the County of Clinton that violated his constitutional rights. Monell, 436 U.S. at 690.  However, as discussed *supra*, because the Court finds that Defendant Wylie is entitled to absolute immunity for

---

[6]  The Court notes that other courts have held that a prosecutor's involvement in an interrogation – particularly a coercive interrogation – in some cases may not enjoy the protection of absolute immunity. See, e.g., Kittler v. City of Chicago, No. 03 C 6992, 2004 WL 1698997, at *7 (N.D. Ill. July 27, 2004) (denying absolute immunity to prosecutor at motion to dismiss stage because court "could not find at this juncture that there was no possibility based on the allegations that [prosecutor] did not participate in the interrogation of [plaintiff] in an investigative capacity"); Williams v. Valtierra, No. 00 C 5734, 2001 WL 686782, at *3 (N.D. Ill. June 18, 2001) ("[T]his court declines to hold that prosecutors can join coercive interrogations as active participants and be absolutely shielded from civil liability."); cf. Giraldo v. Kessler, No. 11–2367–CV, 2012 WL 4039831, at *3-4 (2d Cir. Sept. 14, 2012) (stating that some involvement in interrogation by prosecutors may be protected by absolute immunity).  Nevertheless, in this case, despite allegations that Defendant Wiley intended to intimidate Plaintiff, the facts provided in Plaintiff's affidavit do not suggest either that Defendant Wiley's statements were made directly and coercively to Plaintiff, or that Plaintiff in any way *was* intimidated or coerced by such statements.

his conduct as alleged by Plaintiff, to survive the County Defendants' Motion for summary judgment, Plaintiff must have established a genuine dispute of material fact as to whether the remaining individual County Defendants (Defendants John and Jane Does 1-10) held policymaking authority and implemented a policy or decision officially adopted by the County of Clinton. After carefully considering the matter, the Court finds that Plaintiff has failed to meet his burden on these issues and that the County Defendants' Motion for summary judgment as to Plaintiff's municipal liability claim against Defendant County of Clinton could be granted on this basis alone.[7]

However, even assuming *arguendo* that the conduct of Defendant Wylie (that gives rise to Plaintiff's claims) were not protected by absolute immunity, Plaintiff has failed to adduce sufficient admissible evidence to establish a genuine dispute of material fact as to whether Defendant Wylie's conduct was in furtherance of an official policy or custom promulgated by Defendant County of Clinton. Plaintiff has submitted an affidavit from an attorney that practices law in Clinton County purporting to establish that, in either 2003 or 2004, Defendant Wylie referred to an African American as a "nigger" in the course of an off-the-record conversation. Dkt. No. 31 at 22-23; Dkt. No. 30 at ¶ 15 (Atty. Narrow's Affd.)). Assuming that the Affidavit correctly characterizes Defendant Wylie's comments, it would raise concerns about Defendant Wylie's *personal* racism or racial bias. That being said, the account is insufficient to establish that Defendant Wylie, at the time he uttered the word, was promoting or pursuing an official policy or custom promulgated by Defendant County of Clinton, that this single offensive and unacceptable statement is proof a broader policy, or that such conduct actually violated Plaintiff's constitutional rights. See Zahra, 48

---

[7] In addition, the Court notes that Plaintiff's Complaint fails to specifically allege any facts regarding Defendants John and Jane Does 1-10. (See generally Dkt. No. 1.)

F.3d at 685 (finding that, to hold a municipal liable under a theory of *respondeat superior*, a plaintiff must establish that the municipality holds an official policy or custom that causes a plaintiff to be subjected to a denial of a constitutional right); Hazan v. City of New York, 98-CV-1716, 1999 WL 493352, at *2 (S.D.N.Y. July 12, 1999) (dismissing the plaintiff's municipal liability claim because the plaintiff failed to allege "the existence of any governmental custom of policy regarding the use of racial slurs").[8]

Therefore, the Court grants the County Defendants' Motion for summary judgment, and all of the claims against Defendant County of Clinton are dismissed.[9]

**B. City Defendants' Motion for Judgment on the Pleadings**

*1. The Parties' Briefing on the City Defendants' Motion*

Generally, in support of their Motion for judgment on the pleadings, the City Defendants argue that: (1) due to its sheer length, Plaintiff's Complaint does not put City Defendants on fair notice of the facts upon which Plaintiff's claims rely; (2) Plaintiff's Complaint fails to allege

---

[8] Cf. Brown v. Croce, 967 F. Supp. 101, 104 (S.D.N.Y. 1997) (a "claim of racial slurs or epithets reflecting racial prejudice cannot form the basis of a claim under [§] 1983.").

[9] The Court notes that, although Plaintiff has submitted an affidavit pursuant to Rule 56(d) of the Federal Rules of Civil Procedure arguing that he should be permitted further discovery before the Court grants the County Defendants' Motion for summary judgment, the Court finds that the affidavit fails to, *inter alia*, address what facts he seeks to resist that portion of the Motion or how those facts might create a genuine dispute of material fact as to whether Defendant County of Clinton promulgated an official policy pursuant to which Defendant Wylie allegedly violated Plaintiff's constitutional rights.  See generally Dkt. No. 27; see Gurary, 190 F.3d at 43 (finding that the nonmovant opposing summary judgment on the grounds that additional discovery is needed must establish, inter alia, the facts sought to resist the motion and how those facts are expected to create a genuine dispute of material fact).  Indeed, Plaintiff's affidavit addresses only Plaintiff's discovery needs as they relate to the claims against Defendant Wylie.  (See generally Dkt. No. 27.)  For these reasons, the Court finds it appropriate to grant the County Defendants' Motion for summary judgment as to Plaintiff's municipal liability claim against Defendant County of Clinton without permitting Plaintiff further discovery.

"specific facts" that identify which City Defendants are liable for unlawful or false arrest and unlawful or false imprisonment; (3) a Grand Jury twice indicted Plaintiff on the charges for which he was arrested establishes that City Defendants lawfully arrested Plaintiff; (4) Plaintiff's Complaint does not allege facts plausibly suggesting that City Defendants are liable for malicious prosecution because, *inter alia*, City Defendants had probable cause to arrest Plaintiff, and the criminal charges against Plaintiff were dismissed, not due to his innocence, but due to the prosecution's lack of evidence connecting Plaintiff to the crimes; (5) Plaintiff's Complaint does not allege facts plausibly suggesting that the process issued against Plaintiff by City Defendants was unjustified, or pursued to achieve a collateral objective; (6) Plaintiff's Complaint contains merely conclusory allegations as it relates to Plaintiff's conspiracy claim; (7) Plaintiff's Complaint does not allege facts plausibly suggesting a causal connection between Defendant City of Plattsburgh's alleged policy and Plaintiff's constitutional deprivation; and (8) based on the Complaint's factual allegations, Defendants Racicot, Major, Martin, and Barry are protected from liability as a matter of law by the doctrine of qualified immunity.  See generally Dkt. No. 22-1.

Generally, in response to City Defendants' Motion for judgment on the pleadings, Plaintiff argues that: (1) Plaintiff's Complaint alleges facts plausibly suggesting that the City Defendants did not have probable cause to arrest Plaintiff; (2) it is premature to grant Defendants Racicot, Major, Martin, and Barry qualified immunity; (3) Plaintiff's Complaint alleges facts plausibly suggesting that Defendants Racicot and Barry acted in their supervisory capacities in exercising deliberate indifference to Plaintiff's constitutional rights; (4) Plaintiff's Complaint alleges facts plausibly suggesting that City Defendants arrested Plaintiff without probable cause, giving rise to a claim for malicious prosecution; (5) Plaintiff's Complaint alleges facts plausibly suggesting that City

Defendants issued process with intent to do harm against Plaintiff, giving rise to a claim for abuse of process; (6) Plaintiff's Complaint "has alleged the required specific instances of concerted misconduct by the [City Defendants]"; and (7) Plaintiff's Complaint puts the City Defendants on fair notice of the facts upon which Plaintiff's claims rely.  See generally Dkt. No. 26.

    *2.  Analysis*

        a.  Plaintiff's First and Second Causes of Action Against City
        Police Officer Defendants[10]

    Plaintiff's first and second causes of action are for (1) unlawful or false arrest and (2) unlawful or false imprisonment.[11]  Compl. ¶¶ 166-212.  False arrest and false imprisonment are functionally the same cause of action.  See Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) ("The common law tort of false arrest is a species of false imprisonment."); Holland v. City of Poughkeepsie, 90 A.D.3d 841, 845 (N.Y. App. Div. 2011) ("The third cause of action alleged false arrest and false imprisonment, which are two names for the same tort.").  In addition, the elements of a false arrest claim under §1983 "are substantially the same as the elements of a false arrest claim under New York law."  Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992); see also Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006) ("In analyzing [Section] 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred.") (quotation marks omitted); Singer, 63 F.3d at 118; Holland, 90 A.D.3d at 845.  "Under New York law, the elements of a false imprisonment claim are (1) the defendant intended to confine

---

[10]  The Court refers to Defendants Racicot, Major, Martin, and Barry as "City Police Officer Defendants."

[11]  The Court notes that Plaintiff's Complaint also includes a failure-to-intervene claim in the first and second causes of action.  Compl. ¶¶ 166-212.  Because Plaintiff's fifth cause of action is a failure-to-intervene claim, the Court will analyze that claim *infra*.

the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." Singer, 63 F.3d at 118 (quotation marks and brackets omitted).

Because of this fourth element, if the arresting officer has probable cause for the arrest, "there can be no federal civil rights claim for false arrest." Singer, 63 F.3d at 118 (citing Bernard v. U.S., 25 F.3d 98, 102 [2d Cir. 1994]); see also Holland, 90 A.D.3d at 845. "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable precaution in the belief that an offense has been committed by the person to be arrested." Singer, 63 F.3d at 119 (quotation marks omitted).

Here, after carefully considering the matter, the Court finds that, liberally construed, Plaintiff's Complaint alleges facts plausibly suggesting that Defendants Major, Martin, and Racicot unlawfully or falsely arrested Plaintiff. More specifically, regarding Defendants Major and Martin, Plaintiff alleges that, on November 19, 2007, Defendants Major and Martin arrested and charged Plaintiff with assault in the first degree and criminal possession of a weapon in the third degree for allegedly stabbing Gary Desir. Compl. ¶¶ 38-40, 70-71. In addition, Plaintiff's Complaint alleges that Plaintiff was conscious of his confinement and that Plaintiff did not consent to his confinement. Id. at ¶¶ 54, 55, 171.

The element that City Defendants argue is absent from Plaintiff's Complaint is the element requiring that Plaintiff's arrest was not privileged. Dkt. No. 22-1 at 14-15. However, the Court finds Plaintiff's Complaint contains more than the "a formulaic recitation" of this element, because Plaintiff has alleged the following facts: (1) Defendants Major, Martin, and Wylie arrested Plaintiff without a warrant; (2) Defendants Major, Martin, and Wylie arrested Plaintiff despite the eyewitness

reports to Defendants City Police Officers that Plaintiff did not stab Gary Desir on November 18, 2007; (3) Gary Desir (the victim) did not accuse Plaintiff of stabbing him; (4) Defendants City Police Officers knew that they did not have sufficient evidence to arrest and charge Plaintiff, but did so anyway; (5) Defendants City Police Officers prepared and filed a felony complaint that contained allegations they knew to be untrue, or knew were unlikely to be true; and (6) Defendants City Police Officers failed to investigate the exculpatory information allegedly provided by an eyewitness.  See generally Compl.  The Court finds that these factual allegations plausibly suggest that Plaintiff's arrest by Defendants Major and Martin was not privileged.[12]

As to Defendant Racicot, although the Court finds that Plaintiff's Complaint does not allege facts plausibly suggesting that Defendant Racicot *directly participated* in Plaintiff's allegedly false arrest, as discussed more completely *infra* in the context of Plaintiff's supervisory-misconduct claim, the Court finds that Plaintiff's Complaint – liberally construed – alleges facts plausibly suggesting that Defendant Racicot was *personally involved as a supervisor* in the Plattsburgh P.D. for Plaintiff's alleged unlawful or false arrest or imprisonment.

However, as to Defendant Barry, the Court finds that Plaintiff's Complaint does not support a claim that Defendant Barry was personally involved in the alleged false arrest of Plaintiff.  For example, the Complaint expressly alleges that it was Defendants Major, Martin and Wylie who

_____

[12]  Moreover, the Court notes that where, as here, an arrest is extrajudicial, the burden is on Defendants to prove an absence of privilege or justification; while a claim of false arrest may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if the factual allegations of the plaintiff's complaint compel the conclusion that the arresting officer possessed probable cause for the arrest, a plaintiff need not allege the absence of privilege in order to state a claim.  Allen v. Hand, 09-CV-1388, 2010 WL 2682257, at *3 (N.D.N.Y. Apr. 6, 2010) (Report-Recommendation), adopted by 2010 WL 2682248 (N.D.N.Y. July 2, 2010); Caidor v. M&T Bank, 05-CV-0297, 2006 WL 839547, at *5 (N.D.N.Y. March 27, 2006).

22

arrested Plaintiff.  See e.g., Compl. ¶¶ 38, 70.  Moreover, the Complaint merely alleges – in a

conclusory fashion – that Defendant Barry and "all other unidentified [Defendants City Police

Officers] knew or should have known that said [Defendants Major, Martin, and Wylie] had

unlawfully placed plaintiff under arrest without a warrant and without probable cause."  Id. at ¶ 71.

Therefore, the Court finds that Plaintiff's own allegations acknowledge that Defendant Barry was

not personally involved in Plaintiff's arrest.

Therefore, as it relates to Plaintiff's unlawful or false arrest and unlawful or false

imprisonment causes of action against the City Police Officer Defendants, the City Defendants'

Motion for a judgment on the pleadings is granted as to Defendant Barry.[13]  While the Court

concludes that Plaintiff has stated claims against Defendants Major, Martin, and Racicot, City

Defendants' Motion is also granted as to these claims based on the Court's qualified immunity

analysis, *infra*.

> b.  Plaintiff's Third Cause of Action Against Defendant City Police
> Officers

Plaintiff's third cause of action is for malicious prosecution.  Compl. ¶¶ 213-231.  "Liability

for the tort of malicious prosecution also gives rise to liability under [Section] 1983."  Savino v.

City of New York, 331 F.3d 63, 72 (2d Cir. 2003) (citing Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir.

1994)).  In New York, "the elements of an action for malicious prosecution are (1) the initiation of a

proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice."

Savino, 331 F.3d at 72 (quotation marks omitted) (citing Colon v. City of New York, 60 N.Y.2d 78,

82 (N.Y. 1983)).  "[T]he existence of probable cause is a complete defense to a claim of malicious

---

[13]  The Court analyzes the City Defendants' Motion for judgment on the pleadings regarding
Plaintiff's claims against Defendant City of Plattsburgh under a theory of municipal liability *infra*.

I

prosecution." <u>Savino</u>, 331 F.3d at 72.  "The return of an indictment creates a presumption as to the existence of probable cause."  Fulton v. Robinson, 289 F.3d 188, 198 (2d Cir. 2002).  "[T]hat presumption is rebuttable by a showing 'that the indictment was the product of fraud, perjury, the suppression of evidence by police, or other police conduct undertaken in bad faith.'"  Fulton, 289 F.3d at 198 (quoting Marshall v. Sullivan, 105 F.3d 47, 54 (2d Cir. 1996)).

Here, the Court finds that – even given a generous reading – Plaintiff's complaint fails to state facts satisfying the elements of a malicious prosecution claim.  Putting aside the fact that Plaintiff's Complaint contains only general allegations of malice, the Court finds that Plaintiff has failed to rebut the presumption of probable cause created by the grand jury's return of an indictment.  <u>See</u> Fulton, 289 F.3d at 198.  Therefore, because "the existence of probable cause is a complete defense to a claim of malicious prosecution," Plaintiff's claims for malicious prosecution must be dismissed.[14]  Savino, 331 F.3d at 72.  And, City Defendants' Motion for judgment on the pleadings is granted as it relates to Plaintiff's malicious-prosecution claim against City Police Officer Defendants.

<u>c.</u>  <u>Plaintiff's Fourth Cause of Action Against City Police Officer Defendants</u>

Plaintiff's fourth cause of action is a claim of abuse of process.  Compl. ¶¶ 232-254.  An abuse-of-process claim can give rise to liability under § 1983.  <u>Savino</u>, 331 F.3d at 76-77; <u>see also</u> <u>Cook</u>, 41 F.3d at 80.  "In New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act

---

[14]  Because the Court grants City Defendants' Motion on the grounds of probable cause, the Court does not find it necessary to address the question of whether the criminal proceeding was terminated in Plaintiff's favor and therefore declines to address this issue.

(2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." <u>Cook</u>, 41 F.3d at 80; <u>see also</u> <u>Zarro v. Spitzer</u>, No. 06-CV-1166, 2009 WL 3165761, at *6 (N.D.N.Y. Sept. 25, 2009). "[T]he gist of abuse of process is the improper use of process after it is regularly issued." <u>Cook</u>, 41 F.3d at 80 (quotation marks omitted). "In New York, such wrongful purposes have included economic harm, extortion, blackmail, and retribution." <u>Ketchuck v. Boyer</u>, No. 10-CV-0870, 2011 WL 5080404, at *7 (N.D.N.Y. Oct. 25, 2011) (quotation marks omitted).

After carefully considering the matter, the Court finds that – even liberally construed – Plaintiff's Complaint fails to allege facts plausibly suggesting that City Police Officer Defendants employed process against Plaintiff to achieve an illegitimate, collateral objective. <u>See</u> <u>Cook</u>, 41 F.3d at 80 (requiring that the process employed against a plaintiff by the defendant must be "to obtain a collateral objective that is outside the legitimate ends of the process"). More specifically, although Plaintiff's Complaint alleges that "defendants employed regularly issued criminal process against plaintiff . . . in a manner evidencing malice, gross negligence and recklessness," Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants City Police Officers' use of process (whether with or without the requisite intent) was either: (1) to do harm without justification; or (2) an effort to achieve some objective other than to investigate and charge the person responsible for stabbing Gary Desir on November 18, 2007. <u>See</u> <u>Savino</u>, 331 F.3d at 77 (holding that a plaintiff "must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution").

In addition, as the City Defendants highlight in their Reply, according to Plaintiff's own factual allegations, City Police Officer Defendants' involvement in Plaintiff's underlying criminal

action lasted only for approximately twenty-four hours.  Specifically, Plaintiff was arrested on November 19, 2007, and he was arraigned on November 20, 2007, at which point Plaintiff was – by Plaintiff's own account – "remanded to the Clinton County jail."  Compl. ¶ 89.  Therefore, any process issued by Defendants City Police Officers in this case occurred only to *initiate* the proceedings against Plaintiff, which is insufficient to state a claim for abuse-of-process.  See Miles v. City of Hartford, 445 F. App'x 379, 383 (2d Cir. 2011) ("It is undisputed that an abuse of process claim may only be based on events *subsequent to* initiation.") (italics in original); Lopez v. City of New York, 901 F. Supp. 684, 691 (S.D.N.Y. 1995) ("The pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim.").

Therefore, the City Defendants' Motion for judgment on the pleadings is granted as it relates to Plaintiff's abuse-of-process claim against City Police Officer Defendants.

### d.  Plaintiff's Fifth Cause of Action Against City Police Officer Defendants

Plaintiff's fifth cause of action is a failure-to-intervene claim.  Compl. ¶¶ 255-279.  Because the Court has found that City Police Officer Defendants are entitled to judgment on the pleadings as to Plaintiff's malicious-prosecution and abuse-of-process claims, the Court addresses only whether Plaintiff has alleged facts plausibly suggesting that City Police Officer Defendants are liable for failing to intervene in Plaintiff's alleged false arrest by Defendants Racicot, Major, and Martin.

"In the context of a false arrest, the duty to intervene is described as follows: 'An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know that a citizen has been unjustifiably arrested or that any constitutional violation has been committed by a law enforcement official.' Furthermore, in order for liability to attach, there must have been a realistic opportunity to intervene to prevent harm

from occurring." Wilson v. City of New York, No. 06-CV-0229, 2010 WL 3585906, at *8

(E.D.N.Y. Sept. 7, 2010) (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)).

Furthermore, as the Court has explained *supra*, to state any claim under § 1983, Plaintiff must allege

facts plausibly suggesting that a defendant was personally involved in the constitutional violation

alleged. Wright, 21 F.3d at 501.

After carefully reviewing Plaintiff's Complaint, the Court finds that – even liberally

construed – the allegations contained therein relating to Plaintiff's failure-to-intervene claim against

Defendants Racicot, Major, and Martin do not plausibly suggest their liability. More specifically,

Plaintiff's Complaint contains vague and conclusory allegations that fail to distinguish which, if

any, Defendant was responsible for actually violating Plaintiff's constitutional rights and which, if

any, Defendant failed to intervene to prevent such violations from occurring.[15] In addition, the

Court finds that none of Plaintiff's generalized allegations, as they relate to Plaintiff's failure-to-

intervene claim, put Defendants Racicot, Major, and Martin on "fair notice of what [Plaintiff's]

claim is and the grounds upon which it rests." Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204,

212 (N.D.N.Y. 2008) (quotation marks omitted); see also Bouche v. City of Mt. Vernon, No. 11-

---

[15] For example, Plaintiff's Complaint contains the following four allegations relating to Plaintiff's failure-to-intervene claim: (1) "CHIEF RACICOT . . . [and] other [City] POLICE OFFICERS . . . had an affirmative duty to intervene to protect the constitutional rights of . . . plaintiff[] . . . and failed to . . . intercede to prevent the infringement of plaintiff's constitutional rights by the other defendants despite knowing plaintiff was unlawfully arrested and detained . . ." Compl. at ¶ 61; (2) "[E]ach defendant had the power and duty to restrain the others and prevent them from violating the law and depriving plaintiff of his rights, but each of the said defendants failed and refused to perform that duty and failed and refused to restrain the others, each thereby becoming a responsible party to the injuries inflicted upon plaintiff;" id. ¶ 173); (3) "[D]efendants failed to intervene to protect or aid plaintiff when such [constitutional] violations [allegedly conducted by 'defendants'] did occur;" id. ¶ 257; and (4) "[D]efendants had the authority, ability and concurrent duty . . . to prevent the . . . false arrest . . . incurred on plaintiff by virtue of defendants' unlawful conduct from occurring, but defendants failed to intervene. . . when such violations did in fact occur." Id. ¶ 265.

CV-5246, 2012 WL 987592, at *7 (S.D.N.Y. Mar. 23, 2012) (dismissing the plaintiff's failure-to-intervene claim because the plaintiff's allegation that "'defendants had an affirmative duty to intervene on behalf of [the plaintiff], whose constitutional rights were being violated in their presence by other officers'" did not sufficiently identify "which defendants were responsible for specific actions").

Therefore, the City Defendants' Motion for judgment on the pleadings as it relates to Plaintiff's failure-to-intervene claim against City Police Officer Defendants is granted.

### e.  Plaintiff's Seventh Cause of Action Against City Police Officer Defendants

Plaintiff's seventh cause of action is for supervisory misconduct.  Compl. ¶¶ 301-315. Because the Court has found that Defendants City Police Officers are entitled to judgment on the pleadings as to Plaintiff's malicious-prosecution and abuse-of-process claims, the Court will address only whether Plaintiff has alleged facts plausibly suggesting that Defendants City Police Officers are liable for supervisory misconduct in the context of the surviving false-arrest claim.

Although Plaintiff argues in his Memorandum of law in opposition that his Complaint "sufficiently alleges that [Defendants Racicot and Barry] were in supervisory roles and specifically involved in the overseeing the other named defendants," the Court finds that Plaintiff's Complaint contains no allegations plausibly suggesting that Defendant Barry was, at any relevant period of time, a supervisor in the Plattsburgh P.D.  See generally Compl.  More specifically, Defendant Barry is directly identified in only four paragraphs in Plaintiff's Complaint (which contains a total of three-hundred fifty-one paragraphs).  Id.  The first paragraph that specifically references Defendant

28

Barry identifies him as "JOHN BARRY (hereinafter referred to as 'DET. BARRY')."[16]  Id. ¶ 27.)

Similarly, the second and third paragraphs that specifically reference Defendant Barry identify him

as "DET. BARRY."  Id. ¶¶ 70-71.  However, the fourth and last paragraph that specifically

references Defendant Barry identifies him as "*DEPUTY* BARRY."[17]  Id. ¶ 281 (emphasis added).

More importantly, none of these paragraphs either explains Defendant Barry's title within the

Plattsburgh P.D., or describes the allegedly supervisory role that Defendant Barry held within the

Plattsburgh P.D.  See generally id. at ¶¶ 27, 70-71, 281.  As a result, because Plaintiff's Complaint

fails to allege facts plausibly suggesting that Defendant Barry held a supervisory role within the

Plattsburgh P.D., the Court is unable to find that Plaintiff successfully stated a supervisory-

misconduct claim against Defendant Barry.  Moreover, given the detailed and exhaustive nature in

which Plaintiff's other claims are pleaded, the Court concludes that this pleading omission is a

defect that is substantive and not merely formal in nature.

---

[16] The Court notes that this shorthand reference (i.e., "DET. BARRY") is the same shorthand reference that Plaintiff gives to Defendants Major and Martin (i.e., "DET. MAJOR" and "DET. MARTIN."  Compl. ¶ 27.

[17]  More specifically, the allegation reads as follows: "[T]hat prior to plaintiff's unlawful arrest, imprisonment and prosecution, the COUNTY, CITY, SHERIFF, DA WYLIE, the other PROSECUTORS, CHIEF RACICOT, DET. MAJOR, DET. MARTIN, and DET. FIRST DEPUTY COMMISSIONER, DEPUTY BARRY created and tolerated a long standing policy . . . ."  Compl. ¶ 281.  The Court is unable to discern with confidence whether the reference to "DET. FIRST DEPUTY COMMISSIONER" is a description of Defendant Barry's role within the Plattsburgh P.D., or a reference to an additional, unknown (and perhaps unnamed) Defendant.  Assuming for the sake of argument that "DET. FIRST DEPUTY COMMISSIONER" is intended to describe Defendant Barry's role within the Plattsburgh P.D., the Court finds that the allegation fails to suggest the authority and responsibilities of a "Det. First Deputy Commissioner" such that the Court can conclude Defendant Barry held a supervisory role sufficient to subject him to liability under a theory of supervisory misconduct.  Nor does the allegation plausibly suggest how Defendant Barry allegedly created, promulgated, and/or enforced the policy or custom in question; rather, the allegation is conclusory in that regard.

I

In contrast, Plaintiff's Complaint alleges that Defendant Racicot, who was the "Chief," was "the official appointed by [Defendant City of Plattsburgh]. . . who personally selected, and supervised, had direct knowledge of, participated in, and was directly responsible for the actions of all employees and agents of [the Plattsburgh P.D.], including the other POLICE OFFICERS . . . ." Compl. ¶¶ 27, 30.  Because the Court finds that this factual allegation plausibly suggests that Defendant Racicot possessed and exercised supervisory authority over Defendants City Police Officers, the Court analyzes Plaintiff's supervisory-misconduct claim against Defendant Racicot.

Supervisor liability under § 1983 can be established in any of the following ways:

> (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that uncsontitutional acts were occurring.

Hernandez v. Keane, 342 F.3d 137, 144 (2d Cir. 2003); see also Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003); Wright, 21 F.3d at 501.  Here, Plaintiff's Complaint alleges that Defendant Racicot "knew or should have known" that Plaintiff's arrest was unlawful, and that despite that knowledge, Defendant Racicot "failed to take any action to prevent or deter said unlawful conduct . . . ." Compl. ¶¶ 70, 71.  Liberally construed, Plaintiff's factual allegations plausibly suggest that Defendant Racicot was personally involved in Plaintiff's alleged false or unlawful arrest by way of his supervisory capacity because he allegedly "failed to remedy the wrong."  Wright, 21 F.3d at 501.

Therefore, the City Defendants' Motion for judgment on the pleadings as it relates to Plaintiff's supervisory-misconduct claim against Defendants Major, Martin, and Barry is granted.

While Plaintiff's claim against Defendant Racicot would otherwise survive City Defendants' Motion, Defendant Racicot is protected by qualified immunity, as discussed *infra*.

> f.  Plaintiff's Eighth Cause of Action Against City Police Officer Defendants

Plaintiff's eighth cause of action is a conspiracy claim.  Compl. ¶¶ 316-334.  Because the Court has found that the City Police Officer Defendants are entitled to judgment on the pleadings as to Plaintiff's malicious-prosecution and abuse-of-process claims, the Court will address only whether Plaintiff has alleged facts plausibly suggesting that Defendants Racicot, Major, or Martin are liable for conspiring to arrest Plaintiff falsely.

A conspiracy for purposes of § 1985(3) "need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct."  LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 427 (2d Cir. 1995) (quotation marks omitted); Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).  However, the conspiracy must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."  Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993).

Here, after carefully considering the matter, the Court finds that Plaintiff's Complaint fails to allege facts plausibly suggesting that any of the City Police Officers Defendants are liable for conspiracy.  Although Plaintiff's Complaint is rife with general, conclusory allegations of a "conspiracy" by "defendants" (collectively, including the County Defendants), such allegations do not state a claim because, to survive a motion for judgment on the pleadings, Plaintiff must have

31

done more than insert the word "conspiracy" throughout his Complaint to plausibly state a claim.[18] For example, Plaintiff's Complaint gives the City Defendants no fair notice of which Defendant is alleged to have conspired with whom.

Therefore, as it relates to Plaintiff's conspiracy-claim against the City Police Officers Defendants, the City Defendants' motion for judgment on the pleadings is granted.

g.  Plaintiff's Sixth Cause of Action Against Defendant City of Plattsburgh

Plaintiff's sixth cause of action is a municipal liability claim against Defendants County of Clinton and City of Plattsburgh.  Compl. ¶¶ 280-300.  As discussed *supra*, "[l]ocal governing bodies . . . can be sued directly under [§1983] for monetary, declaratory, or injunctive relief where. . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Monell, 436 U.S. at 690.  However, a municipality cannot be held liable under § 1983 for the "actions alleged to be unconstitutional by its employees below the policymaking level on the basis of *respondeat superior*."  Zahra, 48 F.3d at 685; see also Monell, 436 U.S. at 691; Amensty Am., 361 F.3d at 125.

In addition, to prevail on a §1983 claim against a municipality, a plaintiff must demonstrate that the policy, ordinance, regulation, or decision adopted by the municipality, and implemented by its employee(s), caused the plaintiff's alleged constitutional deprivation.  Monell, 436 U.S. at 691-

---

[18] See Ciambrielli v. Cnty. of Nassau, 292 F.3d 307, 326 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."); Thomas, 165 F.3d at 147 ("[A] plaintiff alleging a conspiracy under [§] 1985[3] must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy.").

92.  This can be shown either by establishing that the policy itself is unconstitutional, or that the

application of an otherwise lawful policy is unconstitutional.  <u>Amnesty Am.</u>, 361 F.3d at 125.

Here, Plaintiff alleges that Defendant City of Plattsburgh[19] "created and tolerated a long

standing policy of deliberate indifference to the civil rights of minorities evidenced by the fact that

they have repeatedly failed to adequately discipline their respective agents and employees for

perjury or for assisting in the prosecution of innocent persons and failing to properly investigate

crimes and have failed to adequately train and supervise their respective agents and employees to

assure that they are truthful and do not allow, condone, or assist in the prosecution of innocent

persons." Compl. ¶ 155.  However, this allegation does not contain sufficient facts to suggest with

any plausibility that Defendant City of Plattsburgh has tolerated a policy of deliberate indifference to

the rights of minorities.[20]  More specifically, the allegation fails to set forth facts establishing any

_____

[19]  The Court notes that Plaintiff's Complaint asserts this allegation against "defendants" in general, rather than specifying a particular Defendant.  The Court construes these allegations as against the municipal-defendants, Defendants County of Clinton and City of Plattsburgh, because even when an individual is sued in his official capacity, "in all respects other than name, [the suit is] to be treated as a suit against the entity."  <u>Brandon v. Holt</u>, 469 U.S. 464, 471-72 (1985).

[20]  Plaintiff also alleges that "prior to plaintiff's unlawful arrest, . . . COUNTY, CITY, . . . DA WYLIE, . . . CHIEF RACICOT, DET. MAJOR, DET. MARTIN and DET. DEPUTY COMMISSIONER, DEPUTY BARRY created and tolerated a long standing policy or custom of deliberate indifference to the civil rights of minorities which unlawfully deprived individuals of their civil liberties and then condoned or otherwise did not effectively prevent attempts by defendants and their agents and employees to cover up their misdeeds . . . ."  Compl. ¶ 281.  Although this particular allegation – unlike the one quoted *supra* – identifies specific Defendants, the allegation does not contain *facts* (as opposed to a mere *conclusion*) to support a plausible conclusion that Defendant City of Plattsburgh created or maintains a policy of indifference to the civil rights of minorities.  <u>Cf.</u> <u>Missel v. Cnty. of Monroe</u>, 351 F. App'x 543, 545 (2d Cir. 2009) (dismissing plaintiff's municipal-liability claim because, "although [the plaintiff] asserts that [the defendant-municipality's employee] acted pursuant to [the defendant-municipality] policies of 'permitting deputies to publish false statements' and 'targeting perceived pedophiles for harassment,' the complaint contains no facts to supports these claims").

correlation between Defendant City of Plattsburgh's alleged failure-to-train its employees on the professional value of truthfulness and Defendant City of Plattsburgh's alleged policy of indifference to the civil rights of minorities.  See Monell, 436 U.S. at 691-92 (holding that to prevail in a § 1983 case under a theory of municipal-liability, the plaintiff must demonstrate that the municipality's policy *caused* the plaintiff's alleged constitutional deprivation); Vippolis v. Vill. of Haverstraw, 758 F.2d 40, 44 (2d Cir. 1985) ("A plaintiff who seeks to hold a municipality liable in damages under [S]ection 1983 must prove that . . . an official policy or custom [is] the *cause* of the deprivation of constitutional rights.") (emphasis added).

In addition, the Court finds that Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendant City of Plattsburgh is liable under a theory of *respondeat superior*. Specifically, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendant Racicot (the only individual Defendant alleged to have policymaking authority), in allegedly falsely or unlawfully arresting Plaintiff under a theory of supervisory liability, implemented an official policy of deliberate indifference to the civil rights of minorities adopted by Defendant City of Plattsburgh. Instead, Plaintiff's Complaint, as it relates to Plaintiff's municipal-liability claim, contains only conclusory allegations that do not support a municipal-liability claim under a theory of respondeat superior.

Therefore, as it relates to Plaintiff's municipal-liability claim against Defendant City of Plattsburgh, City Defendants' Motion for judgment on the pleadings is granted.

### h.  Qualified Immunity for City Police Officer Defendants

34

Because the only remaining claim in this action against any of the City Defendants is a claim of unlawful or false arrest against Defendants Racicot, Major, and Martin, the Court analyzes only whether those three City Defendants are entitled to qualified immunity with regard to that claim.

After carefully considering the matter and closely examining Plaintiff's Complaint and the parties' arguments, the Court finds that Defendants Racicot, Major, and Martin are entitled to qualified immunity. As City Defendants correctly observe, Plaintiff's arrest was "based on an investigation that included interviewing numerous witnesses;" at Plaintiff's arraignment, "a Judge determined that there was sufficient evidence at that time to judicially remand Plaintiff to the Custody of the County Sheriff's Department;" and two grand juries subsequently issued indictments. Dkt. No. 35 at 6-9.

Generally, Grand Jury indictments create a presumption that a plaintiff's arrest was based on probable cause. See Bernard v. U.S., 25 F.3d 98, 104 (2d Cir. 1994) ("In New York, the fact that the Grand Jury returned an indictment against [the plaintiff] creates a presumption that his arrest and indictment were procured with probable cause."). This probable cause, if it exists, entitles the arresting officers to qualified immunity because it demonstrates that it was objectively reasonable for the arresting officers to believe that their conduct (i.e., the arrest of the plaintiff) did not violate clearly established law. See Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 424-25 (S.D.N.Y. 2002) (finding that the defendants were entitled to qualified immunity because, *inter alia*, the plaintiff's "conclusory allegations that the officers' conduct violated his Fourth Amendment rights are contradicted by the findings of [the judge] and the grand jury that there was probable cause to believe [that the plaintiff] had committed a crime"). Of course, the presumption of probable cause based on Grand Jury indictments may be rebutted by establishing that the

indictments were "produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." <u>Bernard</u>, 25 F.3d at 104.[21]

Here, Plaintiff admits that the he was indicted *twice* by a Grand Jury.  Compl. ¶¶ 96, 111. Although Plaintiff's Complaint alleges that "defendants, in bad faith, did not produce or disclose exculpatory evidence and information in this complaint to the grand jury, but rather fraudulently . . . misled . . . the grand jury to find probable cause," Compl. ¶ 118, Plaintiff has failed to provide factual allegations that support a finding of "bad faith" or "fraud" in the procurement of the indictment.

First, to the extent that the Complaint alleges that Defendant Wylie, in his role as prosecutor, fraudulently procured the Grand Jury indictments, the Court is unconvinced that the Complaint contains facts or allegations – beyond mere conclusory statements – that plausibly support this contention.  It is unclear to the Court what exculpatory evidence Plaintiff alleges was dishonestly withheld.  The DNA evidence that led to the dismissal of the case was not available – according to any party – at the time of the grand jury presentments.  If it had been, the Court's analysis here might be very different.  Instead, it appears – although it is not entirely clear – that Plaintiff bases his claim on the failure to produce evidence about a lack of substantial eye witness corroboration or identification of Plaintiff by Desir.  Even if these allegations were made in a more than general and conclusory fashion, the Second Circuit has held that prosecutors have "the discretion and authority to decide what evidence to present to the grand jury" and are not under a "duty to present every item

---

[21]  The existence of a Grand Jury indictment free from fraud, perjury, suppression of evidence or other misconduct is not the only way an arresting officer can show that probable cause existed for the arrest.  Rather, an arresting officer may possess such probable cause independent of any such indictment.

36

of arguably exculpatory evidence in seeking an indictment." Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003). In this case, Plaintiff has failed to allege facts that would support a finding that Defendant Wiley acted in bad faith or behaved in such a way as to vitiate the presumption of probable cause created by the indictment. See id.; Bernard, 25 F.3d at 104; cf. U.S. v. Williams, 504 U.S. 36, 55 (1992) (explaining that, because grand jury is not required to consider all potentially exculpatory evidence, the prosecutor was not under a binding obligation to present it). Further, the Complaint contains no allegations that Defendants Racicot, Major, or Martin had any personal involvement in allegedly failing to disclose exculpatory evidence to the Grand Jury. See generally Compl. Indeed, Plaintiff's Complaint fails to allege facts plausibly suggesting that any of Defendants Racicot, Major, or Martin: (1) interviewed any of the witnesses that allegedly provided exculpatory information about Plaintiff, Compl. ¶ 43; (2) failed to provide exculpatory information to the prosecution (assuming they had acquired any at all); (3) testified at Grand Jury; or (4) persuaded the prosecution to withhold exculpatory information (to the extent any existed) from the Grand Jury. Because Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Racicot, Major, or Martin were personally involved in procuring either of the indictments in bad faith, Plaintiff's Complaint also fails to sufficiently rebut the presumption that he was arrested with probable cause.

Therefore, the Court finds that Defendants Racicot, Major, and Martin are entitled to qualified immunity on the false arrest and false imprisonment claims because it was objectively reasonable for them to believe that their arrest of Plaintiff was lawful, and not in violation of Plaintiff's constitutional rights.

**V.      CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the County Defendants' Motion for judgment on the pleadings and/or summary judgment (Dkt. No. 20) is **GRANTED** as to all claims against Defendant County of Clinton; and it is further

**ORDERED**, that the County Defendants' Motion for judgment on the pleadings and/or summary judgment (Dkt. No. 20) is **GRANTED** as to all claims against Defendant Wylie in his official and individual capacities; and it is further

**ORDERED**, that Defendant County of Clinton is **DISMISSED with prejudice** from this action; and it is further

**ORDERED**, that Defendant Wylie is **DISMISSED with prejudice** from this action; and it is further

**ORDERED**, that the City Defendants' Motion for judgment on the pleadings (Dkt. No. 22) is **GRANTED**; and it is further

**ORDERED**, that the only remaining Defendants in this case are Defendants John and Jane Does 1-30; and it is further

**ORDERED**, that Plaintiff's Letter Motion requesting a Rule 16 conference (Dkt. No. 40) is **DENIED as moot**; and it is further

**ORDERED**, that Plaintiff's counsel is to contact Magistrate Judge Treece's chambers to schedule a conference in accordance with Rule 16; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

**IT IS SO ORDERED**.

38

DATED:      September 27, 2012
            Albany, New York


_____
            Lawrence E. Kahn
            U.S. District Judge